```
┌────────────────────────────────────┐
│ USDC SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #:_____              │
│ DATE FILED: __10/28/2025__          │
└────────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SAT AERO HOLDINGS, INC.,

                 Plaintiff,

         - against -

AEROLINEA DEL ESTADO MEXICANO, S.A.
DE C.V.,

                 Defendant.

---

AEROLINEA DEL ESTADO MEXICANO, S.A.
DE C.V.,

                 Counterclaim Plaintiff,

         - against -

SAT AERO HOLDINGS, INC.,

                 Counterclaim Defendant.

**24 CV 2300(VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

In this action, plaintiff SAT Aero Holdings, Inc. ("SAT") alleges that defendant Aerolinea del Estado Mexicano, S.A. de C.V. ("Aerolinea") breached an aircraft leasing agreement (see "Agreement," Dkt. No. 16-1) between the parties. (See "Complaint" or "Compl.," Dkt. No. 1). SAT seeks compensatory damages for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual and business relationships, and quantum meruit. (See id. ¶¶ 74-101.)

1

Aerolinea answered with four counterclaims sounding in fraudulent inducement and breach of contract, or, in the alternative, conversion and unjust enrichment. (See "Counterclaim" or "Countercl.," Dkt. No. 16.) SAT now moves to dismiss the first and third counterclaims for fraudulent inducement and conversion, respectively. (See "MTD," Dkt. No. 24.) For the reasons set forth below, SAT's motion to dismiss is **GRANTED** in part and **DENIED** in part. The Court dismisses Aerolinea's first counterclaim, as although it is not duplicative, Aerolinea fails to satisfy the pleading standards. Aerolinea's third counterclaim for conversion is not duplicative of the breach of contract claim and may proceed.

## I.    BACKGROUND[1]

Aerolinea is a Mexican corporation that was created to launch a new airline. (See Countercl. ¶ 11.) Aiming to operate regular flights before the end of 2023, Aerolinea initiated a request for proposal ("RFP") process earlier that year to find a commercial partner that could help Aerolinea procure ten insured Boeing 737-800 aircraft, in addition to trained

---

[1] Except as otherwise noted, the following background derives from Aerolinea's Counterclaim. (See Dkt. No. 16.) The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to Aerolinea, as required under the standard set forth in Section III below.

pilots and flight attendants to serve as crew for Aerolinea's flights. (See id. ¶¶ 11-12.) SAT, a Texas corporation formerly known as Petrus Aero Holdings, Inc., was among the more than twenty companies that Aerolinea considered for the contract. (See id. ¶ 13.)

Aerolinea communicated to each potential partner that it needed three aircraft by September 30, 2023, and seven additional aircraft by October 30, 2023. (See id. ¶ 14.) SAT responded by "promising to deliver and lease" by the specified dates ten aircraft of the requested year and model to Aerolinea for a seven-year term. (Id. ¶¶ 6, 14-15, 51, 54.) SAT also made representations about its capabilities by: (1) providing tail numbers and engine serial numbers for the aircraft (id. ¶¶ 51, 54); (2) providing a letter of financial capacity from a lender, Crestone Air Partners ("Crestone"), to support its "financial wherewithal" (id. ¶ 51); (3) ensuring it would hire and provide pilots and crews (id. ¶¶ 6, 51); (4) ensuring the delivery of insurance and maintenance (id. ¶¶ 6, 51); and (5) ensuring "the ability to provide" performance, hidden defects, and quality guarantees for the aircraft (id. ¶ 55).

At the end of the RFP process, Aerolinea selected SAT as its partner, and the parties signed the Agreement on August

18, 2023. Pursuant to the Agreement's terms, as relevant to the motion at issue here, SAT was obligated to: (1) deliver to Aerolinea three insured aircraft by September 30, 2023 (see Agreement at Arts. 2.B.a, 5.A, 5.B); (2) deliver to Aerolinea seven insured aircraft by October 30, 2023 (see id. at Arts. 2.B.b, 5.A, 5.B); and (3) provide fully trained and credentialed crews to operate and attend each aircraft (see id. at Arts. 2, 10, 12). A chart in the Agreement included the serial numbers of the aircraft SAT planned to deliver. (See id. at Art. 5.B.) The Agreement also stipulated that Aerolinea would pay SAT a security deposit for the lease of the aircraft, which would be paid "upon signing of the agreement and once [a] corresponding invoice [was] submitted." (See id. at Art. 4.)

After SAT failed to deliver any of the aircraft by the contractual dates, the parties began negotiating revisions to the Agreement, including modifications to the original delivery schedule. (See Countercl. ¶¶ 30-41.) Aerolinea alleges SAT again made several representations, including: (1) a "promise[]" to deliver personnel and aircraft under a revised schedule (id. ¶¶ 32, 38, 57); and (2) a "promise[]" to perform and fulfill all other outstanding obligations (id. ¶¶ 32, 38). The parties ultimately signed an amendment to the

4

Agreement (see "Amendment," Dkt. No. 16-2) on November 27, 2023. Along with the revised delivery schedule, the parties also amended the terms of the security deposit, which Aerolinea had not paid because SAT had not yet issued an invoice for the aircraft. (See Amendment at Art. 4.) In December 2023, Aerolinea transferred to SAT a security deposit of roughly $10 million after SAT sent invoices for two aircraft. (See Countercl. ¶ 77.) As of the date Aerolinea filed its Counterclaim, SAT had not delivered any of the aircraft to Aerolinea or returned the security deposit. (See id. ¶¶ 43, 45-46.)

## II.  **PROCEDURAL HISTORY**

SAT initiated this action on March 27, 2024, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual and business relationships, and quantum meruit. (See Compl. ¶¶ 74-101.) On March 14, 2025, Aerolinea answered and asserted four counterclaims: (1) fraudulent inducement; (2) breach of contract; (3) conversion; and (4) unjust enrichment. (See Countercl. ¶¶ 50-86.)

After completion of the pre-motion letter exchange outlined in this Court's Individual Practice II.B, SAT filed its motion to dismiss Aerolinea's fraudulent inducement and

conversion counterclaims on May 22, 2025 (see MTD), supported by a memorandum of law. (See "Memorandum" or "Mem.," Dkt. No. 25.) On June 19, 2025, Aerolinea filed an opposition to the motion to dismiss. (See "Opposition" or "Opp'n," Dkt. No. 30.) On July 3, 2025, SAT filed a reply in support of its motion. (See "Reply," Dkt. No. 32.)

### III. **LEGAL STANDARD**

The standard for dismissal of a counterclaim is the same as the standard for dismissal of a complaint. See Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (internal quotation marks and citation omitted). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. In deciding a Rule 12(b)(6) motion, the court draws all reasonable inferences in the non-moving party's favor. See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013) (citation omitted).

## IV.   DISCUSSION

SAT argues that Aerolinea's first counterclaim for fraudulent inducement is duplicative of Aerolinea's breach of contract claim – or, alternatively, that Aerolinea has failed to satisfy Rule 9(b)'s pleading requirements. (See Mem. at 7-19.) As to Aerolinea's third counterclaim for conversion, SAT likewise argues that it is duplicative of Aerolinea's breach of contract claim. (See Mem. at 19-21.) For the reasons explained below, the Court **GRANTS** SAT's motion to dismiss Aerolinea's first counterclaim. Although the fraudulent inducement claim is not duplicative of Aerolinea's breach of contract claim, Aerolinea fails to satisfy Rule 9(b)'s pleading standards. The Court **DENIES** SAT's motion to dismiss Aerolinea's third counterclaim, finding that the conversion claim is not duplicative of the breach of contract claim.

A.   Fraudulent Inducement

1.   Duplicative

7

Aerolinea's fraudulent inducement claim is not duplicative of its breach of contract claim. While courts have held that a "fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, *i.e.*, when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract," First Bank of Americas v. Motor Car Funding, Inc., 690 N.Y.S.2d 17, 21 (App. Div. 1st Dep't 1999), "fraud and breach of contract claims can coexist in certain circumstances." Trodale Holdings LLC v. Bristol Healthcare Investors L.P., No. 16-CV-4254, 2018 WL 2980325, at *4 (S.D.N.Y. June 14, 2018); see also Wall v. CSX Transp. Inc., 471 F.3d 410, 416 (2d Cir. 2006) ("[N]ot every fraud claim is foreclosed in an action also involving a contract."). To allege an action of fraud arising from a contractual relationship, Aerolinea must demonstrate that (i) SAT had a legal duty separate from the duty to perform under the contract, or (ii) SAT made a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) Aerolinea seeks special damages that were caused by the alleged misrepresentation and are unrecoverable as contract damages. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996). Notably, when a "fraud claim satisfies one of [those]

8

scenarios, there is no need to address the other ones." Subramanian v. Lupin, Inc., No. 17-CV-5040, 2020 WL 7029273, at *13 (S.D.N.Y. Aug. 21, 2020), report and recommendation adopted, No. 17-CV-5040, 2020 WL 6075523, at *5 (S.D.N.Y. Oct. 15, 2020).

Here, the question is whether SAT's alleged fraudulent misrepresentations are collateral or extraneous to the parties' ultimate Agreement and Amendment. Although the parties acknowledge that New York law recognizes the tort of fraudulent inducement of a contract, they disagree about what constitutes "collateral or extraneous" under Bridgestone. Aerolinea argues that pursuant to a recent line of cases, a statement of present fact – as opposed to a promise to perform in the future – can support a claim for fraudulent inducement; a plaintiff need not make a separate showing that the fact is collateral to the contract. (See Opp'n at 8-10.) Under this framework, "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184

(2d Cir. 2007); see also Xeriant, Inc. v. XTI Aircraft Co.,
762 F. Supp. 3d 345, 355 (S.D.N.Y. 2025).

SAT, on the other hand, argues that the Court should
more narrowly construe those cases. (See Reply at 1-4.) SAT
contends that not every alleged misrepresentation of a
present fact is, by its very nature, also collateral to the
contract and that a plaintiff must separately show that it is
extraneous. (See id.) SAT points the Court to cases finding
that pre-contractual misrepresentations cannot support a
fraud claim where the subject matter was later incorporated
into the "very heart of the Agreement," Warner Theatre Assocs.
Ltd. P'ship v. Metro. Life Ins. Co., No. 97-CV-4914, 1997 WL
685334, at *5 (S.D.N.Y. Nov. 4, 1997), and to other cases –
including decisions by this Court – requiring a plaintiff to
separately show how the misrepresentation was collateral to
the contract. See, e.g., Compass Prods. Int'l LLC v. Charter
Commc'ns, Inc., No. 18-CV-12296, 2019 WL 4198586, at *8
(S.D.N.Y. Aug. 8, 2019); Spanierman Gallery, PSP v. Love, No.
03-CV-3188, 2003 WL 22480055, at *3-4 (S.D.N.Y. Oct. 31,
2003).

In the cases Aerolinea cites, however, courts still
distinguish between a "promissory statement of what will be
done in the future . . . and a misrepresentation of a present

fact." Merrill Lynch, 500 F.3d at 184. In Xeriant, the
plaintiff alleged that the defendant "fraudulently
misrepresented that they had engineered designs" for a
certain technology that did not exist to induce the plaintiff
to sign a joint venture agreement. 762 F. Supp. 3d at 357. As
part of that joint venture, the defendant agreed to license
the technology to the plaintiff. See id. at 350. The court
found that the allegation did not concern a promise to perform
in the future but instead related to "the current state of
engineering designs" – a representation collateral to the
agreement. Id. at 357. Similarly, the court found that "a
misrepresentation of the 'true cost,' . . .of a future
activity, without any promise to conform performance to that
cost," was a misrepresentation of a present fact. Id. The
defendant's "commitment to merge" with the plaintiff,
however, was "simply a promise to perform." Id.

Here, the Court finds Xeriant's reasoning persuasive but
applies the approach taken by several other courts in this
district. In Sanmina Corp. v. Dialight plc, the court
explained that the "difference between promises to perform
and representations about present facts can be subtle, and
can boil down to the difference between a statement that a
party *will* perform and a statement that a party *can* perform."

11

No. 19-CV-11710, 2023 WL 9022882, at *9 (S.D.N.Y. Dec. 29, 2023) (emphases added) (internal quotation marks omitted). In other words, a misrepresentation of a promise – or a party's intent to perform - is not collateral to a contract, but a misrepresentation of an ability to perform can support a separate tort claim. Thus, "[a] party's representation that, for instance, it will distribute the other party's funds to third parties as specified in a written agreement is a promise to perform cognizable only in contract." Id. (citation omitted). But "[i]t is quite something else to induce someone to enter a contract by lying as to one's current financial condition, present ability to perform, and the like." Wild Bunch, SA v. Vendian Ent., LLC, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017).

In Wild Bunch, a film distributor brought an action against a film financing company and its president, alleging fraudulent inducement, among other claims, based on the company's alleged misrepresentations related to its capacity to provide financing. Id. at 501-02. During discussions with the distributor - which needed $3 million in gap funding to gain an interest in an upcoming movie - the financing company "repeatedly represented that [it] already had the ability to provide such financing without further approvals or

contingencies." Id. Pursuant to the parties' eventual
contract, the company agreed to set aside $3 million to fund
the movie. Id. Less than a year later, the distributor
notified the company that it needed the $3 million in gap
financing, and the parties signed another contract that
superseded the earlier agreement. Id. After the distributor
discovered that the financing company never possessed the
actual funds – as they were contingent on separate approval –
the distributor brought an action alleging that the company
"duped" it into entering both agreements based on the
misrepresentations that it had the ability to provide the
funding. Id.

Finding that the fraud claim was not duplicative of the
breach of contract claim, the court explained that while "[i]t
is true that some courts in this district are seemingly split
on whether misrepresentations concerning a party's current
financial wherewithal or ability to perform on a contemplated
contract are sufficiently 'collateral' to maintain fraudulent
inducement and contract claims simultaneously[,] . . . New
York law is clear that, at a minimum, false statements about
a party's present financial condition or current ability to
perform, made in order to induce a party to enter into a
contract, will support a claim of fraudulent inducement." Id.

13

at 506. "Courts therefore cannot recharacterize statements that are unmistakably about present facts and made for the purpose of inducing a party to enter a contract as being about future intent to perform." Id. "[S]uch an approach would severely undercut the fraudulent inducement cause of action, because lies about one's solvency and abilities to perform are exactly the sorts of lies that would likely induce a counterparty to enter a contract." Id.

However, while the court found that the "alleged false statements of present fact made prior to or within" the first contract were collateral, the statements made after the first contract was formed were not. Id. ("After that contractual duty kicked in, any further statements about [defendant's] ability or intention to pay the $3 million, whether false or not, . . . amount to mere false assurances of [defendant's] intent to perform[.]").

Therefore, here, the Court finds that – at the outset – SAT's alleged misrepresentations after the parties entered into the Agreement but before the parties signed the Amendment are not collateral or extraneous. Those alleged misrepresentations include SAT's promise to deliver personnel and aircraft under a revised schedule (see Countercl. ¶¶ 32, 38, 57) and SAT's promise to perform and fulfill all other

14

outstanding obligations (see id. ¶¶ 32, 38). Additionally, SAT's original "promis[e] to deliver and lease" by the specified dates ten aircraft of the requested year and model (id. ¶¶ 6, 14-15, 51, 54) is just that: a promise. Although SAT made this statement during the RFP process and before the parties signed the Agreement, it does not reflect SAT's ability to perform. Instead, it constitutes a representation that SAT *will* perform – which is not extraneous. See Sanmina, 2023 WL 9022882, at *9.

The court also finds, however, that some of the alleged misrepresentations SAT made before the signing of the Agreement are collateral and can therefore support a separate claim for fraudulent inducement. Those statements relate to SAT's capabilities – statements made to represent that SAT *could* perform its obligations under the Agreement. See id. As discussed, Aerolinea asserts that SAT made alleged misrepresentations during the RFP process by providing: (1) tail numbers and engine serial numbers to evidence the availability of the aircraft (Countercl. ¶¶ 51, 54); (2) a letter of financial capacity from Crestone to support its "financial wherewithal" (id. ¶ 51); (3) assurances it would hire and deliver pilots and crews (id. ¶¶ 6, 51); (4) assurances related to insurance and maintenance (id. ¶¶ 6,

15

51); and (5) assurances it had the "the ability" to offer performance, hidden defects, and quality guarantees for the aircraft (id. ¶ 55). While the promise to deliver the aircraft merely reflects a future intent to perform, those five alleged misstatements all relate to what SAT represented was its present ability. See, e.g., Man Advisors, Inc. v. Selkoe, 101 N.Y.S.3d 843, 844 (App. Div. 1st Dep't 2019) ("Plaintiff does not allege that [defendant] misrepresented the intent to perform on the guarantee and underlying promissory note, which would render the fraud claim duplicative, but rather alleges that [defendant] misrepresented his . . . ability to perform."); BML Props. Ltd. v. China Constr. America, Inc., 232 N.Y.S.3d 466, 469 (App. Div. 1st Dep't 2025) (same); Shear Enters., LLC v. Cohen, 137 N.Y.S.3d 306, 309 (App. Div. 1st Dep't 2020) (finding that a claim for fraudulent inducement based on an allegation of concealed inability to perform the contract was not duplicative of the contract claim).

Furthermore, the alleged misrepresentations here are distinguishable from those at issue in two cases that SAT cites in which this Court dismissed the fraudulent inducement claims as duplicative. In Spanierman, "[p]laintiffs entered into a contract with [defendants] to sell a piece of artwork" and then alleged that defendants sold the pieces before paying

16

plaintiffs in accordance with the contracts. 2003 WL
22480055, at *1. There, this Court found that the fraudulent
inducement claim was duplicative of the contract claim
because the "fraud [arose] only from the allegation that
Defendants prematurely sold artwork for which they had not
paid, *in violation of the contracts*." Id. at 4. Similarly, in
Compass, this Court found that pre-merger promises that
turned out to be untrue amounted to "false statements
indicating an intent to perform" under the ultimate merger
contract and could not be considered collateral or
extraneous. 2019 WL 4198586, at *8.

Finally, to the extent SAT argues that the "alleged
misrepresentations were memorialized in the contract" (Mem.
at 7-8), as the court found in Wild Bunch, "[e]ven the
allegedly false warranties of present fact in the [parties'
contract] itself are likewise sufficiently collateral to
survive," as they "merely recite the inducing" alleged
misrepresentations. 256 F. Supp. 3d at 506.

However, although Aerolinea's counterclaim for
fraudulent inducement is not duplicative of its breach of
contract claim, the claim is dismissed for the reasons set
forth below.

2.    Rule 9(b)

17

SAT argues that Aerolinea's allegations fail to satisfy Rule 9(b)'s heightened pleading standards. (<u>See</u> Mem. at 12-19.) To survive a motion to dismiss, Aerolinea must plausibly allege: (1) a material misrepresentation or omission of fact; (2) made by SAT with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance; and (5) resulting damage. <u>See</u> <u>Crigger v. Fahnestock & Co.</u>, 443 F.3d 230, 234 (2d Cir. 2006) (citing <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 119 F.3d 91, 98 (2d Cir. 1997)).

SAT asserts that Aerolinea fails to sufficiently plead its fraudulent inducement claim for three independent reasons: (1) Aerolinea does not allege a material misrepresentation of fact with sufficient particularity; (2) Aerolinea falls short of pleading reasonable or justifiable reliance; and (3) Aerolinea fails to allege a strong inference of scienter – *i.e.*, SAT's knowledge of falsity and intent to defraud. (<u>See</u> Mem. at 7-18.) The Court finds that although Aerolinea adequately pleads justifiable reliance, it falls short of sufficiently alleging a material misrepresentation of fact and scienter.

a)  Material Misrepresentation

First, Aerolinea fails to plead a material misrepresentation of fact with sufficient particularity. A

18

claim for fraudulent inducement must satisfy the requirements
of the heightened pleading standard pursuant to Rule 9(b).
See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust
Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004). "In alleging
fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake. Malice, intent,
knowledge, and other conditions of a person's mind may be
alleged generally." Fed. R. Civ. P. 9(b). Allegations of fraud
must "(1) detail the statements (or omissions) that the
plaintiff contends are fraudulent, (2) identify the speaker,
(3) state where and when the statements (or omissions) were
made, and (4) explain why the statements (or omissions) are
fraudulent." Financial Guar. Ins. Co. v. Putnam Advisory Co.,
LLC, 783 F.3d 395, 402-03 (2d Cir. 2015) (internal quotation
marks omitted).

Here, Aerolinea specifies the individual statements it
asserts are fraudulent. For example, the alleged
misrepresentations not duplicative of its breach of contract
claim include: (1) aircraft tail numbers and engine serial
numbers (Countercl. ¶¶ 51, 54); (2) a letter of financial
capacity from Crestone (id. ¶ 51); (3) SAT's assurances it
would hire and deliver pilots and crews (id. ¶¶ 6, 51); (4)
SAT's assurances related to insurance and maintenance (id. ¶¶

19

6, 51); and (5) SAT's assurances it had the "the ability" to offer performance, hidden defects, and quality guarantees for the aircraft (id. ¶ 55).

Still, SAT argues that Aerolinea fails to identify individual speakers – beyond SAT as an entity – or state with any particularity when the purported misrepresentations occurred. (See Mem. at 13-15.) Although some courts have found those omissions fatal, others have found similar allegations sufficient "when [the] facts are peculiarly within the opposing party's knowledge." Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 516-17 (S.D.N.Y. 2016); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (finding a plaintiff is not prevented "from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible" (internal quotation marks and citation omitted)). Contra Greenspan v. Allstate Ins. Co., 937 F. Supp. 288, 291 (S.D.N.Y. 1996) (finding a plaintiff "must link the allegedly fraudulent statement to an individual speaker" and "attribution to a corporate entity or its representative is insufficient"); CapLOC, LLC v. McCord, No. 17-CV-5788, 2018 WL 3407708, at *10 (S.D.N.Y. June 12,

2018) (finding it insufficient where, "[a]lthough [plaintiff] does describe some meetings between the parties, it fails to say when, where, by whom, and whether in person, over the phone, or by email, these assurances of good faith were made - stating only that they were 'over the course of several months'").

Here, the factual circumstances are distinguishable from those at issue in Minnie Rose. There, the plaintiff alleged that the defendants altered invoices and artificially inflated commissions. See 169 F. Supp. 3d at 509. The court found it sufficient that the plaintiff "identifie[d] the purportedly fraudulent invoices as the factual basis for its allegations" because "details of the fraud [were] likely only within Defendants' knowledge." Id. at 517-18. Here, the alleged fraudulent misrepresentations occurred during contractual negotiations between Aerolinea and SAT. SAT, therefore, does not have the type of peculiar or exclusive knowledge that the defendants possessed in Minnie Rose. Accordingly, as a party to the negotiations, Aerolinea must plead the identity of the alleged speakers with more specificity. Allegations that "SAT responded" does not suffice. (Countercl. ¶ 15.) And finally, while Aerolinea need not "plead dates, times, and places with absolute precision,"

<u>Minnie Rose</u>, 169 F. Supp. 3d at 516, it cannot support its fraud claim by merely alleging that "the representations were made during the competitive RFP process." (Countercl. ¶¶ 12, 14-15; Opp'n at 14.)

In sum, while Aerolinea details the statements it alleges are fraudulent, it fails to meet other requirements necessary to plead a material misrepresentation of fact with particularity.

b) Justifiable Reliance

The Court finds that Aerolinea meets its burden to show that it relied upon SAT's alleged misrepresentations and that its reliance was reasonable. "In general, the reasonableness of a plaintiff's reliance is a nettlesome and fact-intensive question" which courts "will not lightly dispose of at the motion-to-dismiss stage." <u>Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 186 n.19 (2d Cir. 2015). In its Counterclaim, Aerolinea alleges that it reasonably relied on SAT's statements when it "awarded the project to SAT" and when it "enter[ed] into the [Agreement]." (Countercl. ¶¶ 17, 53.) Given the liberal standard, Aerolinea sufficiently pleads justifiable reliance.

22

c) Scienter

Finally, SAT argues that Aerolinea fails to allege facts that support a strong inference of fraudulent intent. (See Mem. at 15.) Fraudulent intent - or scienter – is "not subjected to the more exacting consideration applied to the other components of fraud." Ouaknine v. MacFarlane, 897 F.2d 75, 81 (2d Cir. 1990). Still, while "[m]alice, intent, [and] knowledge . . . may be averred generally, . . . this leeway is not a license to base claims of fraud on speculation and conclusory allegations." Eternity Global, 375 F.3d at 187 (internal quotation marks omitted). Here, Aerolinea "must allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. (internal quotation marks omitted). "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" Loreley Financing, 797 F.3d at 176–77 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007)). Here, the Court finds that Aerolinea fails to sufficiently plead scienter.

(1)  Motive and Opportunity

First, Aerolinea's generalized allegations are insufficient to support the contention that SAT had the requisite motive and opportunity to commit fraud during the RFP process and while negotiating the Amendment. Aerolinea claims that "SAT knew well that [its statements] were not based on reality and made them to induce Aerolinea to choose SAT over the other potential partners" and that SAT's alleged promises "reflect both the motive to secure the contract in a competitive RFP process, and the opportunity by making calculated misrepresentations of present fact." (Opp'n at 16.) Aerolinea also alleges that, "[a]dding insult to injury, SAT doubled-down on its misrepresentations to Aerolinea in order to induce Aerolinea to enter into the Amendment." (Countercl. ¶ 57.)

However, courts in this district have found that similar allegations – without more – are insufficient to show motive and opportunity to commit fraud. For example, in Tradeshift, Inc. v. Smucker Servs. Co., Smucker initiated a request for proposal process to identify a software vendor that could provide a system to manage its supply chain. See No. 20-CV-3661, 2021 WL 4463109, at *1 (S.D.N.Y. Sept. 29, 2021). As part of that process, "Smucker detail[ed] its approximately

24

250 requirements for its software" and Tradeshift, a
contender for the contract, "submitted its completed
[required documents], which represented that Tradeshift could
meet most of Smucker's requirements." Id. Soon after
executing an agreement with Tradeshift, Smucker identified
several defects – many of which related to specific
requirements Tradeshift had confirmed it could meet in its
previously submitted documents. See id. at *2-3. Tradeshift
then sued Smucker for voiding the agreement, and Smucker filed
a counterclaim against Tradeshift for fraudulent inducement
and misrepresentation. See id. The court granted Tradeshift's
motion to dismiss, finding that Smucker failed to
sufficiently allege motive and opportunity. See id. at *6.
The court reasoned that to support its allegations, "Smucker
would have to allege that Tradeshift 'benefitted in some
concrete and personal way from the purported fraud.'" Id.
(quoting Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 72
(S.D.N.Y. 2010)).

Although, "Smucker detail[ed] that the representations
made by Tradeshift led Smucker to select Tradeshift as the
successful bidder for the project," the court found that
"Smucker never explain[ed] how Tradeshift knew that the
representations were false when made, or explain[ed] for what

25

purpose Tradeshift would make them. Smucker merely state[d] in conclusory fashion that 'Tradeshift knew, or should have known, that its representations were false.'" Id. Therefore, the court found that the allegations insufficiently supported motive or opportunity. See id.

Here, just as Smucker alleged in Tradeshift, Aerolinea asserts that SAT's representations led it to "award[] the project to SAT and enter[] into a contract." (Countercl. ¶ 17.) While Aerolinea does allege that SAT made those statements to "trick [Aerolinea] into awarding SAT the lucrative aircraft project," Aerolinea fails to offer any additional evidence beyond the generalized motive to "secure the contract in a competitive RFP process" – the same generalized motive implicit in TradeShift. 2021 WL 4463109, at *6; (id. ¶¶ 16-17). SAT benefitted from its statements just as Tradeshift did, but Aerolinea fails – just as Smucker did – to allege the "concrete and personal" gain required to support fraudulent intent. 2021 WL 4463109, at *6.

Finally, to the extent Aerolinea argues that SAT stood to benefit economically or financially from the awarding of the contract, "a general profit motive, such as the motive to earn fees, is not sufficient motive to commit fraud." Prickett v. New York Life Ins. Co., 896 F. Supp. 2d 236, 246 (S.D.N.Y.

2012) (citing <u>Novak v. Kasaks</u>, 216 F.3d 300, 307 (2d Cir. 2000)); <u>see</u> <u>also</u> <u>ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.</u>, 957 F. Supp. 1308, 1327 (S.D.N.Y. 1997) ("[A]llegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)."); <u>Brookhaven Town Conservative Comm. v. Walsh</u>, 258 F. Supp. 3d 277, 286 (E.D.N.Y. 2017) (finding that "a generalized profit motive that could be imputed to any company . . . has been consistently rejected as a basis for inferring fraudulent intent" (citation omitted)).

> (2) Circumstantial Evidence

Additionally, Aerolinea's pleadings do not provide sufficient circumstantial evidence of conscious misbehavior or recklessness to support a strong inference of fraudulent intent. Aerolinea argues that the "circumstances surrounding SAT's conduct support such an inference of scienter" because "SAT made specific factual representations during the RFP phase, including that it was 'ready, willing, and able to deliver the aircraft on time.'" (Countercl. ¶ 15; Opp'n at 15.) Aerolinea asserts that SAT further mispresented this purported capability by "identifying specific aircraft by tail and engine serial numbers" and by providing to Aerolinea a "letter of financial capacity" from Crestone, one of its

claimed lenders. (Id.) Aerolinea argues that because "[t]hose representations were made at a time when SAT knew it did not own or control the stated aircraft, lacked the financial backing it claimed to possess, and had no realistic ability to meet the strict delivery schedule required," SAT had a clear intent to defraud. (Opp'n at 15-16.) SAT's dissemination of the Crestone letter serves as additional evidence of scienter, Aerolinea contends, because SAT "knew or should have known [it] was misleading or false." (Id.)

Courts, however, have found similar such conclusory statements that a defendant "knew or should have known" insufficient to support a claim of fraudulent intent. See, e.g., PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 495 (S.D.N.Y. 2017) (finding allegations that the alleged scheme was done with the defendant's "knowledge and approval" were "too conclusory and speculative" to support a fraudulent inducement claim); Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (finding factual assertions coupled with conclusory allegations that defendants "knew or should have known" or "knew but concealed" are "so broad and conclusory as to be meaningless"). Here, Aerolinea argues that SAT possessed the requisite intent to defraud because SAT provided specific "tail and engine serial numbers" "at a

time when SAT knew it did not own or control the stated aircraft." (Countercl. ¶¶ 15, 54; Opp'n at 15-16.) But just because SAT did not own or control the aircraft at the time it made the representations does not mean SAT knew or should have known it would never possess those aircraft or be unable to meet the delivery timeline ultimately set forth in the Agreement. Aerolinea attempts to bolster its claim by arguing that SAT "lacked the financial backing it claimed to possess" – specifically citing the Crestone letter that it alleges SAT "knew or should have known was misleading or false." (Id.) Here again, however, Aerolinea fails to offer any circumstantial evidence as to how the letter was a sham or even misleading – falling far short of convincing the Court that SAT intended to use it to lure Aerolinea into the Agreement. Ultimately, Aerolinea makes no attempt to explain why – at the time it was disseminated – the Crestone letter was employed as a ruse to defraud. Nor does Aerolinea support any allegations that SAT acted recklessly. See Shields, 25 F.3d at 1129. Such conclusory allegations do not support scienter.

Next, Aerolinea claims that SAT's promises to provide the "performance, hidden defects, and quality guarantees for those aircraft while knowing that [SAT] did not possess the

29

required information or even control of the aircraft's books"
further support an intent to defraud. (Countercl. ¶ 49.) But
that argument suffers from the same flaws as the first, as
Aerolinea fails to tie the allegations to any "conscious
misbehavior or recklessness." Prysm Grp., LLC v. Emeritus
Inst. of Mgmt. PTE LTD, No. 24-CV-9305, 2025 WL 1827274, at
*9 (S.D.N.Y. July 2, 2025). "Where a complaint fails to allege
motive, the strength of circumstantial allegations of
conscious misbehavior or recklessness must be correspondingly
greater." Vining v. Oppenheimer Holdings Inc., No. 08-CV-
4435, 2010 WL 3825722, at *8 (S.D.N.Y. Sept. 29, 2010)
(internal quotation marks omitted). Here, Aerolinea offers no
reason to suggest why SAT knew or should have known it would
not possess the information or aircraft's books as intended –
let alone why those acts or omissions rise to the level of
the "deliberate illegal behavior" other courts have found
sufficient. See, e.g., Novak, 216 F.3d at 308 ("Intentional
misconduct is easily identified since it encompasses
deliberate illegal behavior, such as securities trading by
insiders privy to undisclosed and material information.").

Finally, Aerolinea asserts – after the fact – that SAT's
"failure to ever deliver even one aircraft to [Aerolinea]"
supports the finding that SAT "never intended" "it would

timely be able to hire pilots and flight crew." (Countercl. ¶ 55.) However, non-performance of a promise is insufficient to demonstrate fraudulent intent. <u>See</u>, <u>e.g.</u>, <u>Travelex Currency Servs., Inc. v. Puente Enters., Inc.</u>, 449 F. Supp. 3d 385, 398 (S.D.N.Y. 2020) (finding that plaintiff's non-performance – its failure to enter into an agreement - could not establish fraudulent intent). Aerolinea also cannot support a claim of recklessness "through hindsight evaluations of a defendant's conduct." <u>Zech Cap. LLC v. Ernst & Young Hua Ming</u>, 636 F. App'x 582, 585 (2d Cir. 2016). Aerolinea "fails to point to any other allegations that create a strong inference of highly unreasonable conduct or an extreme departure from the standard of ordinary care." <u>Prysm Grp., LLC</u>, 2025 WL 1827274, at *10. Accordingly, Aerolinea cannot sustain its allegations of scienter.

Thus, for the reasons detailed above, Aerolinea's fraudulent inducement claim is **DISMISSED.**

B.   <u>Conversion</u>

The Court finds that Aerolinea's third counterclaim for conversion is not duplicative of its breach of contract counterclaim. "According to New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of

the owner's rights." <u>Thyroff v. Nationwide Mutual Ins. Co.</u>, 460 F.3d 400, 403–04 (2d Cir. 2006) (internal quotation marks omitted). "'[A]n action for conversion of money may not lie,' however, when 'damages are merely being sought for breach of contract.'" <u>Andrews v. 27 Red Music Publ'g, LLC</u>, No. 15-CV-7544, 2019 WL 199893, at *3 (S.D.N.Y. Jan. 15, 2019) (quoting <u>FS Media Holding Co. (Jersey) Ltd. v. Harrison</u>, No. 13-CV-3144, 2013 WL 5780771, at *4 (S.D.N.Y. Oct. 25, 2013)). "To determine whether a conversion claim is duplicative of a breach of contract claim, courts look both to the material facts and legal authority upon which each claim is based and to the alleged injuries for which damages are sought." <u>R.B. Development, Co. v. Tutis Capital LLC</u>, No. 12-CV-1460, 2013 WL 12358006, at *19 (E.D.N.Y. Sept. 27, 2013).

Aerolinea's conversion claim is predicated on the roughly $10 million security deposit Aerolinea transferred to SAT in December 2023. (<u>See</u> Countercl. ¶ 76.) As noted, this transfer occurred after the parties signed the Amendment to the Agreement and after SAT sent invoices – pursuant to that Amendment – for two aircraft. (<u>See</u> <u>id.</u>) SAT contends that Aerolinea's conversion claim is duplicative of its breach of contract claim because the "counterclaim merely reuses the very same allegations to plead conversion as it uses to

32

establish a breach of contract" and the allegations are based upon the same facts. (Mem. at 19-20.) SAT argues that because Aerolinea includes the $10 million in its breach of contract damages calculation, it cannot also assert a conversion claim. (Id. at 20.)

The Court might have found SAT's arguments persuasive had Aerolinea undisputedly paid the security deposit pursuant to the parties' original Agreement. Here, however, Aerolinea presents evidence supporting its contention that it transferred the funds pursuant not to the original Agreement but instead to the later Amendment, which SAT alleges in its Complaint was signed under duress. (See Countercl. ¶¶ 38-29; Compl. ¶ 64.) SAT counters that the original Agreement – which both parties agree is enforceable - also required Aerolinea to pay a security deposit. (See Mem. at 20.) However, as Aerolinea points out, the original Agreement required Aerolinea to pay "a security deposit for the lease of the 10 Aircraft" within twenty calendar days "from the date on which the invoice [for those aircraft] is delivered and accepted." (Agreement at Arts. 4.A., 4.C.) Because SAT never issued a valid invoice for the ten aircraft after signing the Agreement - instead issuing the invoice after signing the

Amendment - Aerolinea was never bound to pay a security deposit pursuant to that Agreement. (See id.)

SAT asserts that "on or around November 27, 2023, representatives of the Mexican Ministry of Defense, working on behalf of [Aerolinea], coerced SAT to enter into an amendment to the AMCI Agreement." (Compl. ¶ 64.) The Amendment changed the terms governing the security deposit, providing that Aerolinea was now obligated to pay after SAT's submission of the "signed letter of intent to purchase or lease" each aircraft and the "corresponding invoice in no later than 10 business days." (Amendment at Art. 4.A.) Viewing the facts in the light most favorable to Aerolinea – as is required at this stage - the Court finds that "it was under the Amendment to ACMI Agreement that [Aerolinea] paid, in December 2023, the roughly $10 million based on letters of intent that SAT provided for two aircraft." (Opp'n at 19.) If the Court ultimately finds the Amendment valid despite SAT's claim of duress, Aerolinea must seek recovery under its breach of contract theory. If the Amendment is null and void, Aerolinea may seek recovery under its conversion claim - pleaded in the alternative pursuant to Rule 8(a)(3) - which provides that "a demand for the relief sought" "may include relief in the

alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

Accordingly, SAT's motion to dismiss Aerolinea's third counterclaim for conversion is **DENIED**.

## V.    ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 24) filed by plaintiff SAT Aero Holdings, Inc. ("SAT") to dismiss defendant Aerolinea Del Estado Mexicano, S.A. de C.V.'s ("Aerolinea") first counterclaim for fraudulent inducement is **GRANTED** and the counterclaim is dismissed without prejudice, with leave to replead within fourteen (14) days of the date of this Decision and Order; and it is further

**ORDERED** that SAT's motion (Dkt. No. 24) to dismiss Aerolinea's third counterclaim for conversion is **DENIED**; and it is further

**ORDERED** that SAT shall file an answer to the remaining counterclaims within fourteen (14) days of the date of this Decision and Order.


**SO ORDERED.**

Dated:    28 October 2025
          New York, New York

_____
                      Victor Marrero
                      U.S.D.J.

35